# Richmond.

## TABB v. TABB AND ALS.

### MAY 6th, 1886.

LANDS—*Charges—Satisfaction—Sales free from encumbrances—Case at bar.*—Testator devised lands to J. charged with an annuity to P. To pay it J. sold "White Marsh." In a suit, J. convened the annuitant, P., and the purchaser, H. The court, with the assent of P., ratified the sale, allowed J. to collect one-third of the purchase money for his own use, and secured two-thirds on "White Marsh," the interest thereon to be paid to P. so as to meet the annuity. For several years all went well. But H. failed. The court resold "White Marsh" for a sum insufficient to raise the annuity. P. instituted suit to subject the other lands to supply the deficiency. It was decided by this court (see 78 Va. 313) that the said arrangement exonerated "White Marsh," at least, from the encumbrance of the annuity. After selling "White Marsh" in 1870, J. purchased "Ditchley." In 1872 he made a trust deed on it to secure a debt to the P. E. T. Seminary. In March, 1884, sale was advertised under the trust deed. P. filed his bill alleging that "Ditchley" had been paid for by J. with part of the proceeds of the sale of "White Marsh," and was therefore liable for the deficiency of his annuity, and obtained an injunction to the sale.

HELD:

The interest on the deferred payment secured on "White Marsh" was made payable to P. as an equivalent for the annuity given him by the will, so far at least, as the annuity affected "White Marsh," or the amount of the proceeds of sale which was paid to J.; and even if "Ditchley" was paid for with money so paid to J., no charge thereon would attach in favor of P.

Appeal from decree of circuit court of Gloucester county, rendered May 21, 1884, in a chancery cause, wherein Philip

Tabb (the appellant), was plaintiff, and John Prosser Tabb, W. T. Robins, substituted trustee, and the Episcopal Theological Seminary and High School of Virginia, were defendants.

This appeal is a sequel to the case of *Hughes* v. *Tabb*, 78 Va. 310, where the principal facts are narrated. By deed dated July 30, 1870, James M. Talbott and wife conveyed to John Prosser Tabb, a tract of land situate in said county, and known as "Ditchley." On it the latter and his wife made a trust deed, dated June 19, 1872, to secure a debt to the said High School. In March, 1884, the trustee was about to sell "Ditchley" under the trust deed, and Philip Tabb filed his bill alleging that "Ditchley" had been paid for by John Prosser Tabb with money received by him as part of the proceeds of the sale of the tract of land known as "White Marsh," whereon an annuity, given him by his father's will, was charged, and that hence "Ditchley" was also charged with the payment of his annuity, and obtained an injunction to the sale. The circuit court, on the coming in of the answers of the defendants, dissolved the injunction, and Philip Tabb obtained an appeal to this court.

*Christian & Christian* and *Maryus Jones*, for the appellant.

*W. B. Taliaferro* and *W. T. Robins*, for the appellees.

LEWIS, P., delivered the opinion of the court.

That the appellee, the Protestant Episcopal Theological Seminary and High School is a *bona fide* purchaser for value, and without notice of any adverse claim on the part of the appellant, there can be no doubt. It is so averred in the answers, and there is no proof to the contrary. It's right, therefore, to subject the land known as "Ditchley" to the payment of its

debt secured thereon, in preference to the claim of the appellant, if any he has, is unquestionable., *Shurtz* v. *Johnson*, 28 Gratt. 657; *Freeman* v. *Eacho*, 79 Va. 43; *Hord's Adm'r.* v. *Colbert*, 28 Gratt. 49; 2 Bart. Ch'y Pr., 1005.

The real question in the case is, whether the land is chargeable at all with the payment of the annuity created in the appellant's favor by the will of his father, John Tabb, deceased. The appellant contends that it is, because, he says, it was purchased by John Prosser Tabb with a part of the proceeds derived from the sale of "White Marsh." The bill, however, does not distinctly allege that the land was purchased with money derived from that source, but alleges that in the suit of *Tabb's Ex'or* v. *Hughes et als.* (78 Va. 313), it was charged by the defendants, George Hughes and wife, and the trustee of the latter, that John Prosser Tabb purchased a farm called "Ditchley," and the personalty thereon, with a portion of the $20,000, which was the cash payment made by the said George Hughes, for "White Marsh." And upon this foundation rests the further allegation in the bill, that "Ditchley" and the personalty thereon, is a part of John Tabb's estate, and as such, is chargeable in equity with the plaintiffs annuity, according to the principle recognized by this court in *Warwick* v. *Warwick*, 31 Gratt. 70, and other cases.

On the other hand, the answer of W. T. Robins, the substituted trustee, emphatically denies that "Ditchley" was purchased with the proceeds of "White Marsh;" and John Prosser Tabb, in his answer, neither admits nor denies that such is the fact. He says he is not certain whether the money he paid for the land was part of the proceeds of "White Marsh," but presumes that it was. This, however, did not relieve the plaintiff of the necessity of proving the fact, if he intended to rely upon it, and no proof on the point has been offered.

But apart from this, the answer of John Prosser Tabb sets up the defence that "White Marsh" was sold under a decree of the court, and, with the full consent of the appellant, was relieved of the charge of the appellant's annuity; and we are of opinion that this position is well taken.

The annuity was charged by the will on *the profits* of the testator's real estate, which consisted of several tracts. And as shown by the record of the suit of *Tabb's Ex'or* v. *Hughes et als.*, "White Marsh," the homestead, was sold to Hughes for the sum of $60,000. One of the objects of that suit was to convene all the parties in interest, and thus by a decree of the court to secure to the purchaser a good title. This was accordingly done, the appellant here being a party to the suit, and consenting to the arrangement that was made. That arrangement was that the purchaser should pay substantially in cash the sum of $20,000, and secure the payment of his bond for the residue of the purchase money, to wit: $40,000, by a deed of trust on the land ("White Marsh"), the sum thus secured to bear interest at the rate of seven and a half *per centum per annum,* and to be accepted by the appellant as an *equivalent* for the annuity, *so far at least as "White Marsh" was concerned.* The arrangement thus assented to was carried out under the provisions of the decree of the 10th of December, 1870, and at the time was doubtless considered a highly beneficial one for the appellant. The real estate devised by the testator had greatly depreciated in value and productiveness by the results of the war, and its annual profits afforded a precarious security for the semi-annual payment of the annuity secured thereon by the testator's will. It is not surprising, therefore, that the appellant was willing to accept, in lieu of the charge for the annuity on "White Marsh," the arrangement that was consummated by the above-mentioned decree. And but for the financial crisis of 1873, and the consequent further depreciation of

the value of real estate, and the failure of George Hughes, the purchaser, the result would have been all the appellant could have desired. But be that as it may, it is impossible to construe the written agreement between the appellant and John Prosser Tabb, of the 27th of May, 1870, and the decree of the 10th of December following, otherwise than as indicating the cordial assent of the appellant to the payment to his brother, John Prosser Tabb, of the sum of $20,000 out of the proceeds of the sale of "White Marsh," which, like the land itself, was to be free from any charge on account of the appellant's annuity. In other words, the interest on the sum of $40,000, secured as aforesaid, was made payable to the appellant, in the language of the decree, "as an equivalent for the annuity given him by his father's will," so far as the charge for the annuity affected "White Marsh," or the $20,000 paid to John Prosser Tabb.

It follows, therefore, that even if it were conceded that "Ditchley" was bought with a part of the money so paid to John Prosser Tabb, no lien thereon would attach in the appellant's favor; and consequently there is no error in the decree of which he can complain. The decree must therefore be affirmed.

HINTON, J., dissented.

DECREE AFFIRMED.